IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOMINIC J. ROSE, SR.,            :

    Plaintiff,               :

v.                               :   Civil Action No. GLR-16-761

HARLOE MANAGEMENT CORP.,         :
et al.,
                                 :
Defendants.

**MEMORANDUM OPINION**

THIS MATTER arises out of Plaintiff Dominic Rose, Sr.'s termination from Defendant Harloe Management Corporation ("Harloe Management").  Pending before the Court is Harloe Management and Diana Harloe's Partial Motion to Dismiss (ECF No. 10).  The Motion is fully briefed and no hearing is necessary.  See Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will grant in part and deny in part the Motion.

**I.   BACKGROUND**

**A.   Factual Background**

In March 1987, William Harloe, Jr., late husband of Defendant Diana Harloe, hired Mr. Rose as an employee of Harloe Management, a small family-owned business.  (Compl. ¶¶ 7-8, ECF No. 2).  At his initial hiring, Mr. Rose did not receive a written employment agreement.  (Id. ¶ 9).

For the next seven years, Mr. Rose served as a "general employee" of the corporation until he was promoted to "Director

of Operations" in 1994.  (Id. ¶ 10).  After he accepted this promotion, Mr. Rose and Harloe Management did not execute a written employment agreement outlining Mr. Rose's compensation and duties.  (Id.).  Instead, Mr. Harloe promised Mr. Rose that "if things went well," then Mr. Rose would be transferred a percentage of the company.  (Id. ¶ 12).

As the Director of Operations, Mr. Rose was in charge of managing and operating all nine of Harloe Management's Burger King franchises.  (Id. ¶ 11).  At that time, Burger King Corporation required one district manager for every four stores. (Id. ¶ 12).  Mr. Harloe acknowledged that Mr. Rose saved Harloe Management from having to pay two other salaried employees. (Id.)

Under Mr. Rose's tenure, Harloe Management was very successful.  (Id. ¶ 13).  As a result of this positive performance, Mr. Harloe contacted his attorney, Seymore Goldstein, to discuss the potential ownership transfer promised previously.  (Id. ¶ 14).  After that meeting, Mr. Harloe followed up with Mr. Rose and explained that Mr. Goldstein was uncomfortable with the transfer because Mr. Rose was not family. (Id.).  Nevertheless, Mr. Harloe insisted that he would find a way to follow through with his promise to Mr. Rose.  (Id.).

2

In the years that followed, Mr. Rose continued to work as the Director of Operations and satisfy his duties, never taking vacations or calling out sick. (Id. ¶ 18-19). During this time, Mr. Harloe would frequently acknowledge Mr. Rose's work ethic and sacrifices for Harloe Management. (Id. ¶ 19).

Then, in 2010, Mr. Harloe, facing personal issues, stopped coming into the office or his stores. (Id. ¶ 20). In his place, Mrs. Harloe became more involved in the business. (Id.). In August 2012, Mr. Harloe committed suicide. (Id. ¶ 21). The night of Mr. Harloe's death, Mr. Rose visited Mrs. Harloe and stayed with her until 9:00 a.m., helping her with initial matters after Mr. Harloe's death. (Id.). Mrs. Harloe thanked Mr. Rose and told him that she would not be able to run Harloe Management without him. (Id.).

Shortly thereafter, Mr. Goldstein and Mrs. Harloe's accountant told Mr. Rose that all business affairs were now his responsibility. (Id. ¶ 22). They also indicated that going forward, Mr. Rose would need to participate in all financial meetings and strategic decisions. (Id.). Mrs. Harloe communicated Mr. Rose's responsibilities as the remaining operating partner to all of the Burger King managers. (Id. at ¶ 21-22). She also promised Mr. Rose that she would formally address the ownership transfer in the immediate future. (Id. ¶

3

23).   At that point, Mr. Rose believed that he was operating as part owner of Harloe Management.   (Id.).

In April 2013, Mr. Rose met with Mrs. Harloe, Mr. Goldstein, and Mrs. Harloe's accountant to discuss his future in Harloe Management.   (Id.).   During this meeting, Mrs. Harloe repeatedly told Mr. Rose that she was in the process of making him a franchisee and formally finalizing his ownership in Harloe Management.   (Id.).   Mrs. Harloe also presented Mr. Rose with an offer guaranteeing employment for multiple years with his current salary and ten percent of the net proceeds if the company was sold.   (Id. ¶ 24).   After the meeting, Mrs. Harloe personally assured Mr. Rose that he would receive a percentage of the company, regardless of whether Mr. Goldstein approved. (Id.).   In response, Mr. Rose indicated that he was satisfied with the offer so long as all that was presented to him came to fruition.   (Id.).

Over the next year and a half, Mrs. Harloe continually referred to Mr. Rose as a partner to the Burger King Corporation, its clients, and its associates.   (Id. ¶ 26). Nonetheless, the ownership interest was never transferred due to what Mrs. Harloe described as an "estate issue."   (Id.).

In early 2015, Mrs. Harloe and Mr. Rose began to disagree on how to move forward with the business.   (Id. ¶ 27).

4

Ultimately, their relationship deteriorated so severely that Mrs. Harloe fired Mr. Rose in a meeting on October 26, 2015 and offered him a separation agreement. (Id. ¶ 28). At this meeting, and later in a letter to the Defendants' counsel dated November 6, 2015, Mr. Rose expressed his concerns with the termination. (Id. ¶ 40). On November 10, 2015, Mr. Goldstein responded via letter that Mr. Rose was "discharged for cause" and retracted the severance package offered to Mr. Rose on October 26, 2015. (Id. ¶ 41).

Mr. Rose alleges Defendants failed to compensate him in several ways. First, he asserts that Defendants did not pay him for three of the days he worked during his final pay period. (Id. ¶ 29). Second, he asserts that Defendants did not compensate him for unused vacation that he accumulated at Harloe Management. (Id. ¶ 30). Third, he alleges that Defendants did not compensate him for unused sick leave that he also accumulated. (Id. ¶ 31). Fourth, Mr. Rose asserts that he worked at least twenty hours a week of uncompensated overtime. (Id. ¶ 33).

## B.   **Procedural Background**

Mr. Rose commenced this action in the Circuit Court for Baltimore County, Maryland on January 29, 2016. (ECF No. 1). Defendants removed the case to this Court on March 16, 2016.

5

(Id.).   Mr. Rose asserts the Defendants violated three statutes: (1) Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. ("Lab. & Empl.") §§ 3-401, et. seq. (West 2017) (Count I); the Maryland Wage Payment and Collection Law ("MWPCL"), Lab. & Empl. §§ 3-501, et. seq. (Count III); and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq. (Count II). (Compl., ECF No. 2).   Mr. Rose also raises seven common law claims: (1) breach of contract (Count IV); (2) specific performance (Count V); (3) unjust enrichment (Count VI), (4) promissory estoppel (Count VII); (5) intentional misrepresentation (Count VIII);[1] (6) negligent misrepresentation (Count IX); and (7) fraud (Count X).   (Id.).

On March 22, 2016, Defendants moved to dismiss Counts I, II, and III in part, and dismiss Counts VI, VIII, and X in their entirety.   (ECF No. 10).   Mr. Rose responded in opposition (ECF No. 13) on April 6, 2016, and Defendant replied (ECF No. 16) on April 25, 2016.

---

[1] The Complaint mistakenly labels what would be Counts Eight and Nine, respectively, as Count Eight. The first Count Eight (Intentional Misrepresentation) will thus be referred to as "Count VIII" and the subsequent Count Eight (Negligent Misrepresentation) as "Count IX."

## II.   DISCUSSION

**A.   <u>Standards of Review</u>**

**1.   Rule 12(b)(6)**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the

complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678, or "allegations that are merely conclusory, unwarranted deductions of fact[,] or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).

Generally, "a court may not consider extrinsic evidence at the 12(b)(6) stage." Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). If, however, "a defendant attaches a document to its motion to

dismiss, 'a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" Id. (quoting Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc., 367 F.3d 212, 234 (4th Cir. 2004)).  When the "bare allegations of the complaint" conflict with exhibits or other properly considered documents, "the exhibits or documents prevail." RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

### 2.   Rule 9(b)

Allegations of fraud, which Mr. Rose asserts in Counts VIII and X, are subject to the heightened pleading standard of Rule 9(b).  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-784 (4th Cir. 1999).   Under Rule 9(b), "the circumstances constituting fraud" must be stated "with particularity."  The "circumstances constituting fraud" include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what was obtained thereby." Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc., 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting Windsor Assocs. v. Greenfeld, 564 F.Supp. 273, 280 (D.Md. 1983)).  Mental conditions, such as malice, intent, and knowledge, may be alleged generally.  Fed.R.Civ.P. 9(b).  Fraud

allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6).  <u>Harrison</u>, 176 F.3d at 783 n.5.

**B.    <u>Analysis</u>**

**1.    MWHL and FLSA (Counts I and II)**

The Court will dismiss Counts I and II to the extent that they seek to recover damages for unpaid overtime claims that accrued prior to January 29, 2013 because both Counts are subject to a three-year statute of limitations.

Count I is subject to the statute-of-limitations period set out in Labor and Employment Section 5-101, which provides that "[a] civil action at law shall be filed within three years from the date it accrues . . . ."  <u>See also</u> <u>Orellana v. Cienna</u> <u>Properties, LLC</u>, No. JKB-11-2515, 2012 WL 203421, at *5 (D.Md. Jan. 23, 2012) ("[T]he statute of limitations for MWHL claims is three years.").

Similarly, Section 255(a) of the FLSA provides that a cause of action must be commenced within three years after the cause of action accrues if the violation was "willful."  29 U.S.C. § 255 (West 2017).  "Because the question of whether defendants' alleged violations were 'willful' is not an element of plaintiff['s] claims" but rather an "anticipat[ion of] a limitations defense that defendants may raise,"  Mr. Rose does not need to allege specific facts that defendants willfully

10

violated the FLSA.  Ford v. Karpathoes, Inc., No. ELH-14-0824,
2014 WL 6621997, at *9, (D.Md. Nov. 20, 2014).  As such, the
Court will apply the FLSA's three-year statute of limitations to
Mr. Rose's claims.

Additionally, under the MWHL or the FLSA, a claim for
overtime pay accrues upon the issuance of the pay check
immediately following the work period during which the services
were rendered.  Orellana, 2012 WL 203421, at *3 (citing Nealon
v. Stone, 958 F.2d 584, 591 (4th Cir. 1992)).

Mr. Rose argues that all of his claims for overtime wages,
including those stemming from paychecks issued prior to January
29, 2013, are not time-barred because they did not accrue until
he ultimately discovered that he would not be receiving any back
pay upon his termination in October 2015.  Defendants argue all
claims for overtime wages stemming from paychecks issued prior
to January 29, 2013 are barred by the statute of limitations.
The Court agrees with Defendants.

A new cause of action accrues each time the employer issues
a paycheck in violation of the FLSA or MWHL, rather than upon
termination.  Orellana, 2012 WL 203421, at *3.  Thus, every time
Harloe Management issued Mr. Rose a paycheck that did not
include the statutorily prescribed wages, a new cause of action
for Rose's unpaid wages accrued.  Rose filed the Complaint on

11

January 29, 2016.  Hence, any claims in Counts I and II for
overtime wages from paychecks issued prior to January 29, 2013
are time-barred and will be dismissed.

### 2.   MWPCL (Count III)

Mr. Rose seeks to recover compensation under the MWPCL for
(1) unpaid accumulated leave, (2) unpaid wages from his final
pay period, and (3) unpaid overtime.  Defendants argue Mr. Rose
cannot recover for unpaid overtime before January 29, 2013, and
that Count III does not sufficiently state a claim because Mr.
Rose cannot accrue leave from year-to-year by the terms of his
leave policy.  The Court agrees with Defendants regarding Mr.
Rose's claims for unpaid overtime under the MWPCL, but rejects
Defendants' argument regarding accrual.

### a.   Accumulated Leave and Unpaid Wages

To establish a claim for unpaid wages under the MWPCL, a
plaintiff is required to prove that, after termination, he was
not timely paid for wages due.  See Lab. & Empl. § 3-505.1; see
also Admiral Mortgage, Inc. v. Cooper, 745 A.2d 1026, 1029-30
(Md. 2000).  The MWPCL also provides that an employer is not
required to pay accrued leave if the employer has a written
policy limiting compensation of accrued leave and notified the
employee of this policy in accordance with Section 3-504(a)(1).
Md. Code Ann., Lab. & Empl. § 3-505 (West 2017).  In relevant

part, Section 3-504(a)(1) provides: "An employer shall give to each employee . . . <u>at the time of hiring</u>, notice of . . . leave benefits" (emphasis added).

Mr. Rose alleges that, at the times of his hiring and subsequent promotion, he never received any employment documents outlining his compensation and leave benefits. (Compl. ¶ 9).[2] He has also asserts that, upon his termination, he did not receive compensation for this accumulated unused leave and for the final three days of his employment. (Compl. ¶¶ 29, 39). The Court concludes that these factual allegations are sufficient to state a claim under the MWPCL. <u>See</u> <u>Amenyah v. Randolph Hills Nursing Care, Inc.</u>, No. TDC-15-3062, 2016 WL 3546219, at *6-7 (D.Md. Jun. 23, 2016) (holding allegations that employers were liable for failing to compensate employees who accrued sick and vacation leave, and that plaintiffs failed to receive or understand employee handbook precluding payment for accrued leave, sufficiently stated a claim under the MWPCL).

_____

[2] The Defendants attach copies of the leave policies to their Memorandum in Support of their Partial Motion to Dismiss. (Defs.' Partial Mot. Dismiss Ex. A, ECF No. 10-2). Because Mr. Rose alleges that he did not receive any written policies, the Court will not consider them at this stage. <u>See</u> <u>Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004) (requiring documents attached to a motion to dismiss to be "integral to and explicitly relied on in the complaint" for the court to consider them at the 12(b)(6) stage).

### b.   Overtime

Under the MWPCL, the statute of limitations for an unpaid overtime claim begins to run two weeks after the employee's wages were due.  Lab. & Empl. §§ 3.507.1, 3.507.2; Admiral Mortgage, 745 A.2d at 1029-30; see also Higgins v. Food Lion, Inc., 197 F.Supp.2d 364, 367-68 (D.Md. 2002) ("Because Plaintiff filed his Complaint on July 21, 2000, his [MWPCL] claim is limited to paychecks that should have been or were issued on July 7, 1997 or later.").

Mr. Rose alleges that he was not paid for overtime he worked from the start of his employment with Harloe Management until his termination.  He has further argued that all of his claims for overtime are timely because they did not accrue until he discovered he would not be paid for this overtime upon his termination.  As explained, however, a claim for overtime pay accrues two weeks after the date the employer should have paid the wages.  Admiral Mortgage, 745 A.2d at 1029-30.  Thus, to the extent that Mr. Rose is seeking to recover unpaid overtime which should have been paid prior to January 15, 2013, Count III is dismissed.

### 3.   Unjust Enrichment (Count VI)

Defendants argue Mr. Rose's unjust enrichment claim should be dismissed because it does not identify the benefit conferred.

14

The Court disagrees.

Unjust enrichment claims have three elements: that (1) a benefit was conferred upon the defendants; (2) the defendants appreciated or knew of the benefit; and (3) it would be inequitable for them to retain the benefit without the payment of its value.  Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 351 (Md. 2007).

In Quickley v. University of Maryland Medical System Corp., the employer automatically deducted thirty minutes from the plaintiff's pay for a meal break, even though the plaintiff regularly worked during that period.  No. CCB-12-321, 2012 WL 4069757 at *6 (D.Md. Sept. 12, 2014).  The employer, allegedly aware of employees working during their meal break, did not provide a means for employees to object to this automatic deduction.  Id.  In the face of these allegations of uncompensated work, the court ruled that the plaintiff sufficiently stated a claim for unjust enrichment.  Id.

Here, like the plaintiff in Quickley, Mr. Rose alleges that he worked overtime to fulfill the duties of his position and that the Defendants did not compensate him accordingly.  He further alleges that the Defendants received a benefit because he performed the work of what should have been three salaried employees, so he ultimately saved them from paying two other

15

employees.   While -- unlike the plaintiff in <u>Quickley</u> -- Mr. Rose alleges he was able to <u>seek</u> compensation for his labor through contract negotiations with Defendants, the fact remains that like the plaintiff in <u>Quickley</u>, Mr. Rose never successfully <u>received</u> compensation.   The Court, therefore, concludes that the Complaint sufficiently states a claim for unjust enrichment.

### 4.   **Intentional Misrepresentation by Concealment (Count IX) and Constructive Fraud (Count X)**

The Court concludes Mr. Rose sufficiently states a claim for intentional misrepresentation by concealment (Count IX) and constructive fraud (Count X).

To state a claim for intentional misrepresentation by concealment or fraudulent concealment, the plaintiff must sufficiently allege that: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." <u>Green v. H & R Block, Inc.</u>, 735 A.2d 1039, 1059 (Md. 1999).   As stated <u>supra</u>, allegations of fraud are subject to the heightened pleading standard of Rule 9(b).   <u>Harrison</u>, 176 F.3d at 783-784.

16

To establish a claim for constructive fraud, Mr. Rose must sufficiently show that he suffered damages due to a "breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." Canaj, Inc. v. Baker and Division Phase III, LLC, 893 A.2d 1067, 1095 (Md. 2006) (internal quotation marks omitted).

For both intentional misrepresentation by concealment and constructive fraud, therefore, a plaintiff must sufficiently allege that the defendant owed a duty to the plaintiff. Defendants argue that as employers, Defendants owed no duty to Mr. Rose, an employee. The Court disagrees.[3]

Although "[t]here is no precise formula for determining the existence of a duty of care between two parties," a plaintiff

---

[3] In their Reply Brief, Defendants also argue that the Complaint does not state a claim for constructive fraud because it is based on Defendants' alleged promises of future action. (Reply Mem. Supp. Defs.' Partial Mot. Dismiss at 7). By failing to raise and argue this point in their initial Motion, Defendants waived it. See Sher v. Luxury Mortg. Corp., No. ELH-11-3656, 2012 WL 5869303, at *9 n.11 (D.Md. Nov. 19, 2012) (concluding defendant's argument was waived because defendant did not raise it until reply brief); see also Marshall v. James B. Nutter & Co., 816 F.Supp.2d 259, 264 (D.Md. 2011) ("This Court has previously held that 'the ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.'" (quoting Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 735 (D.Md. 2006))).

who claims economic loss from misrepresentation must show an "intimate nexus" between the two parties. <u>Griesi v. Atl. Gen. Hosp. Corp.</u>, 756 A.2d 548, 554 (Md. 2000). Maryland courts have found an intimate nexus between parties who have contemplated a long-term relationship. <u>See id.</u> (holding that facts alleging extensive pre-contractual employment negotiations establishes that an intimate nexus was formed); <u>Weisman v. Connors</u>, 540 A.2d 783, 793-94 (Md. 1988) (concluding that two executives engaged in pre-contractual long-term employment negotiations sufficiently established an intimate nexus).

Courts have also considered whether the party making the alleged misrepresentation "had exclusive control over material information necessary for [the other party] to understand the situation." <u>Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.</u>, 262 F.Supp.2d 618, 628 (D.Md. 2003); <u>see also Griesi</u>, 756 A.2d at 556 (weighing heavily the fact that the prospective employer maintained exclusive control over vital job information in its determination that an intimate nexus existed).

Mr. Rose alleges that he worked for and with the Defendants for nearly twenty-nine years, and that on numerous occasions, the parties discussed the potential of Mr. Rose becoming a part owner in Harloe Management. Over that time and at various meetings, he avers that the Harloes referred to and held him out

as a business partner.  In addition, Mr. Rose alleges that he maintained a close personal relationship with Mr. and Mrs. Harloe, citing various conversations at Mr. Harloe's funeral and other personal conversations with Mrs. Harloe after Mr. Harloe's death.  What is more, like the defendant in <u>Griesi</u>, Harloe Corporation and Diana Harloe, as the owner, had exclusive control over the employment information and benefits to be received.  <u>See</u> 756 A.2d at 556.  Mr. Rose has sufficiently alleged that an intimate nexus existed between the two parties such that a legal duty was owed.  Thus, the Court concludes Mr. Rose sufficiently states a claim for intentional misrepresentation by concealment (Count IX) and constructive fraud (Count X).

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT in part and DENY in part Defendants' Partial Motion to Dismiss (ECF No. 10). The Court will DISMISS Counts I and II to the extent Mr. Rose seeks overtime wages from paychecks issued prior to January 29, 2013.  The Court will DISMISS Count III insofar as Mr. Rose seeks overtime wages that should have been paid prior to January 15, 2013.  A separate order follows.

Entered this 17th day of January, 2017.

                                                             /s/

                                                  George L. Russell, III
                                                  United States District Judge